# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### (Indianapolis Division)

TRIANGLE EXPERIENCE GROUP, INC., :
                              :

         Plaintiff,              :

                              :

v.                               :       Case Number: 1:24-cv-00650-JPH-MG

                              :

MAX MINDS, LLC,             :

                              :

         Defendant.           :

## PLAINTIFF TRIANGLE EXPERIENCE GROUP, INC'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM

Marc T. Quigley, Atty. No. 21054-53
KRIEG DeVAULT LLP
12800 North Meridian Street, Suite 300
Carmel, Indiana 46032
Tel: (317) 566-1110
Fax: (317) 636-1507
mquigley@kdlegal.com

Alexandra Wilson Pantos, Atty. No. 37003-49
KRIEG DeVAULT LLP
One Indiana Square, Suite 2800
Indianapolis, Indiana 46204
Tel: (317) 636-4341
Fax: (317) 636-1507
awilson@kdlegal.com

Richard D. Kelley, Esq., *admitted pro hac vice*
Raighne C. Delaney, Esq., *admitted pro hac vice*
Stephen D. Caruso, Esq., *admitted pro hac vice*
BEAN, KINNEY & KORMAN, PC
2311 Wilson Boulevard, Suite 500
Arlington, VA 22201
Tel: (703) 525-4000
Fax: (703) 525-2207
rkelley@beankinney.com
rdelaney@beankinney.com
scaruso@beankinney.com

*Counsel for Plaintiff Triangle Experience Group*

**TABLE OF CONTENTS**

TABLE OF CONTENTS ...................................................................................................... ii

TABLE OF AUTHORITIES .............................................................................................. iii

INTRODUCTION .............................................................................................................. 1

FACTS ALLEGED IN COUNTERCLAIM......................................................................... 1

LEGAL STANDARD......................................................................................................... 3

ARGUMENT ..................................................................................................................... 4

I.    Max Fails to State a Claim for Breach of Contract under the SCLA (Count I) ...................... 4

      a.    The SCLA Constitutes an "Agreement to Agree" ........................................ 4

      b.    The SCLA Lacks Valid Consideration ........................................................ 6

II.   Max Fails to State a Claim for Breach of Contract under the EULA (Count II) ................... 8

III.  Max Fails to State a Claim for Common Law Fraud (Count V)............................................ 9

      a.    Virginia Law Applies and the "Source of Duty" Rule Bars Max's Claim ..................... 9

      b.    Under Indiana Law, Max's Fraud Claim Still Fails........................................ 11

      c.    Max Fails to Plead Fraud with Particularity as Required by FRCP 9(b)..................... 13

IV.   Max Fails to State a Claim for Conversion (Count VI) ........................................................ 14

      a.    Max's Claim for Conversion Fails Under Virginia Law .............................. 15

      b.    Max's Claim for Conversion Fails Under Indiana Law............................................ 16

V.    Max Fails to State a Claim for Unjust Enrichment (Count VII) ........................................... 17

      a.    Max's Unjust Enrichment Claim Fails Under Virginia Law ........................ 17

      b.    Max's Unjust Enrichment Claim Fails Under Indiana Law ......................... 18

VI.   Max's Claim for Punitive Damages, Attorneys' Fees, and Costs Must be Stricken............. 19

CONCLUSION ................................................................................................................. 20

# TABLE OF AUTHORITIES

**Cases**

*A View Est. Trust v. Allstate Ins. Co.,* 2021 Va. Cir. LEXIS 521, at \*37-38 (Norfolk, 2021) ..... 19

*A.B. v. Wal-Mart Stores, Inc.*, 2014 U.S. Dist. LEXIS 140764, \*3-4 (S.D. Ind. 2014) .............. 15

*Active Disposal Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011) .................................. 4

*Allen v. Great Am. Reserve Ins. Co.,* 766 N.E.2d 1157, 1164, 2002 Ind. LEXIS 260, \*14-15 (Ind. Sup. Ct. 2002) ........................................................................................................... 10, 16

*ARC Welding Supply Co. v. Am. Welding & Gas, Inc.*, 2017 U.S. Dist. LEXIS 147187 (S.D. Ind. 2017) ................................................................................................................... 13, 19

*Bayview Loan Servicing, L.L.C. v. Golden Foods, Inc.*, 59 N.E.3d 1056, 1068 (Ind. Ct. App. 2016) ......................................................................................................................... 13

*Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) .................................................................... 4

*Blackson v. Clinchfield Coal Co.,* 2 Va. Cir. 212, 213 (Russell County, 1984) ............................ 8

*Bolton v. McKinney,* 299 Va. 550, 554 (2021) .......................................................................... 20

*Brookshire Mgmt. v. ADT LLC/Defenders, Inc.*, No. 1:22-cv-01086, 2022 U.S. Dist. LEXIS 177209, at \*1 (S.D. Ind. Sept. 29, 2022) ................................................................... 4, 5, 6

*Brown v. Addington*, 114 Ind. App. 404, 52 N.E.2d 640, 642 (Ct. App. Ind. 1944) .................... 8

*Clark-Silberman v. Silberman*, 78 N.E. 3d 708, 715 (Ind. Ct. App. 2017) .................................. 17

*Comentis, Inc. v. Purdue Research Found.*, 765 F. Supp. 2d 1092, 1103 (N.D. Ind. 2011) ........ 19

*Comstock v. Coon*, 135 Ind. 640, 35 N.E. 909, 911 (Ind. 1893) .................................................... 8

*Conwell v. Gray Loon Outdoor Mktg. Grp., Inc.*, 906 N.E.2d 805, 813 (Ind. 2009) ................ 5, 7

*Craftsman Chem. Corp. v. IVC Indus. Coatings*, 2017 U.S. Dist. LEXIS 10019, \*15 (S.D. Ind. 2017) ............................................................................................................................... 19

*CSX Transp., Inc. v. Zayo Grp., LLC*, 2024 U.S. Dist. LEXIS 73500, \*69 (S.D. Ind. 2024) 10, 11, 16

*Davis v. Anderson*, 99 Va. 620 (1901) ........................................................................................ 8

*Druco Restaurants, Inc. v. Steak N Shake Enterprises, Inc.*, 765 F.3d 776, 783-84 (7th Cir. 2014) .................................................................................................................................. 6

*Dunn Constr. Co. v. Cloney*, 278 Va. 260, 263 (2009) ................................................................ 11

*Epperly v. Johnson,* 734 N.E.2d 1066, 1073 (Ind. Ct. App. 2000) .............................................. 13

*Event Holding, LLC v. Kidz Heaven, LLC*, 2022 Ind. App. LEXIS 417, \*9-10 (Ct. App. 2022). 20

*Field v. Alexander & Alexander of Indiana, Inc.*, 503 N.E.2d 627, 631 (Ind. Ct. App. 1987) ....... 8

*Forest River Mfg., LLC v. Lexmark Enter. Software, LLC*, 2017 U.S. Dist. LEXIS 71019, at \*7 (N.D. Ind. 2017) ............................................................................................................. 13

*French-Tex Cleaners, Inc. v. Cafaro Co.*, 893 N.E.2d 1156, 1167-68 (Ct. App. 2008) .............. 17

*Galveston, LLC v. Morris Inv., LLC*, 2020 U.S. Dist. LEXIS 179157, \*15 (S.D. Ind. Sept. 29, 2020) ............................................................................................................................... 17

*Green v. Ingram*, 269 Va. 281, 292 ........................................................................................... 21

*Greg Allen Constr. Co. v. Estelle*, 798 N.E.2d 171, 173 (Ind. 2003) .......................................... 14

*Guinn v. Hoskins Chevrolet*, 361 Ill. App. 3d 575, 604 (2005) ..................................................... 19

*Hibschman Pontiac, Inc. v. Batchelor,* 340 N.E.2d 377, 380 ...................................................... 20

*Hillesheim v. Andymark, Inc.*, No. 1:19-cv-04919, 2020 U.S. Dist. LEXIS 117823, *7-9 (S.D.
    Ind. July 6, 2020) ................................................................................................................... 8

*Jackson v. Luellen Farms, Inc.*, 877 N.E.2d 848, 859 (Ind. Ct. App. 2007) ................................. 8

*Jain v. Old Dominion Nat'l Bank,* 2021 U.S. Dist. LEXIS 211636, at *5 (E.D. Va. 2021) ......... 16

*James G. Davis Constr. Corp. v. FTJ, Inc.*, 298 Va. 582, 592 (2020)........................................... 18

*JMB Mfg. v. Child Craft, LLC*, 939 F. Supp. 2d 909, 917) (S.D. Ind 2013) ............................... 17

*JPMCC 2006-CIBC14 Eads Parkway, LLC v. DBL Axel, LLC*, 977 N.E.2d 354, 364 (Ind. Ct.
    App. 2012) ............................................................................................................................... 13

*Kamlar Corp. v. Haley*, 224 Va. 699, 707 (1983) ........................................................................ 20

*Korellis Roofing, Inc. v. N. Cross Roofing & Waterproofing, Inc.*, No. 2:17-CV-212, 2017 U.S.
    Dist. LEXIS 164196, *3 (N.D. Ind. Oct. 4, 2017) ................................................................. 17

*Lynnwood Tech Holdings LLC v. NR INT. LLC*, 2017 Va. Cir. LEXIS 52, at *142 (Fairfax, 2017)
    .................................................................................................................................................. 11

*Mays v. Trump Indiana, Inc.,* 255 F.3d 351, 357-58 (7th Cir. 2001) .............................................. 6

*McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011).............................................. 4, 5

*McLeskey v. Invest*, 2020 U.S. Dist. LEXIS 107283, at *10 (S.D. Ind. 2020) ............................ 14

*MCR Fed., LLC v. JB&A, Inc.*, 294 Va. 446, 458 (2017) ............................................................ 11

*Mead Johnson & Co. v. Oppenheimer*, 458 N.E.2d 668, 670 (Ind. Ct. App. 1984)...................... 5

*Miller Brewing Co. v. Best Beers of Bloomington, Inc.*, 608 N.E.2d 975 (Ind. 1993) ................ 20

*Morgan v. Fennimore*, 2010 U.S. Dist. LEXIS 129224, at *6-7 (S.D. Ind. 2010)...................... 17

*Ortega v. Forks RV*, 2012 U.S. Dist. LEXIS 7119, *14 (N.D. Ind. 2012) .................................. 17

*Oyoque v. DePaul Univ.*, 520 F. supp. 3d 1058 (N.D. Ill. 2021)................................................. 19

*Peters v. Kendall*, 999 N.E.2d 1030, 1034 (Ind. Ct. App. 2013)................................................... 7

*R3 Composites Corp. v. G&S Sales Corp.*, 960 F.3d 935, 941 (7th Cir. 2020)........................ 6, 7

*RAM Iron & Metal, Inc.,* 2023 U.S. Dist. LEXIS 85352 at *6-7................................................. 14

*Richmond Metro. Auth. v. McDevitt St. Bovis*, 256 Va. 553, 560 (1998) .............................. 11, 12

*Shaw v. Hyatt Int'l Corp.*, 461 F.3d 899, 902 (7th Cir. 2006) ..................................................... 19

*Sinclair v. Banner Life Ins. Co.*, 2023 U.S. Dist. LEXIS 237311, *14 (S.D. Ind. 2023) ....... 17, 18

*SMC Corp. v. PeopleSoft U.S.A., Inc.*, 2004 U.S. Dist. LEXIS 22811, *9-10 (S.D. Ind. 2004) .. 20

*State ex rel. Harmeyer v. Kroger Co.*, 114 N.E.3d 488, 495 (Ind. Ct. App. 2018) ..................... 15

*Taveira v. Vieira*, 2015 Va. Cir. LEXIS 90, at *17 (Va. Beach, 2015) ........................................ 16

*Team Impressions, Inc. v. Chromas Techs. Canada, Inc.*, No. 02 C 5325, 2003 U.S. Dist. LEXIS
    2279, *4 (N.D. Ill. Feb. 18, 2003)............................................................................................ 19

*Tingler v. Graystone Homes, Inc.*, 298 Va. 63, 86 (2019) .................................................... 11, 12

*Tobin v. Ruman*, 819 N.E.2d 78, 86 (Ind. Ct. App. 2004) ........................................................... 13

*United States ex rel. Hanna v. City of Chicago*, 834 F.3d 775, 780 (7th Cir. 2016)................... 15

*United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009) ................ 15

*United States v. Bartle*, 2001 U.S. Dist. LEXIS 22934, *13, n. 5 (S.D. Ind. 2001) ...................... 8

*Utley v. N. Am. Van Lines*, 2002 U.S. Dist. LEXIS 21064, *12 (S.D. Ind. 2002)........................ 10

*Vega v. E Trucking & Servs. LLC,* 103 Va. Cir. 401, 404 (Fairfax, 2019).................................... 11

*Vexol S.A. de C.V. v. Berry Plastics Plastics Corp.*, 2016 U.S. Dist. LEXIS 115374, at *7 (S.D.
    Ind. 2016)................................................................................................................ 10, 11

*Wachovia Bank, N.A. v. Ranson Tyler Chevrolet, L.L.C.*, 73 Va. Cir. 143 (Roanoke, 2007) ...... 16

*Wells v. Freeman Co.*, 2022 U.S. Dist. LEXIS 226599, *25 (S.D. Ind. 2022)............................ 10

*Wenning v. Calhoun*, 827 N.E.2d 627, 629 (Ind. Ct. App. 2005)................................................ 5

*Williams v Melendez, Gano and Faye*, 141 Va. 370 (1925) ...................................................... 16

*Wolvos v. Meyer*, 668 N.E.2d 671, 675-676 (Ind. 1996) ............................................................ 5

*Zukerman v. Montgomery*, 945 N.E.2d 813, 819 (Ind. Ct. App. 2011) ........................................ 5

**Statutes**

Indiana Code § 35-43-4-3 ........................................................................................................ 17

**Rules**

Fed. R. Civ. P. 12(b)(6).............................................................................................................. 5

Fed. R. Civ. P. 8(a)(2)............................................................................................................. 19

Fed. R. Civ. P. 9(b) ................................................................................................................. 12

Plaintiff Triangle Experience Group, Inc. ("TEG"), by counsel, and in support of its Motion to Dismiss the Counterclaim filed by Defendant Max Minds, LLC ("Defendant" or "Max"), states as follows.

## INTRODUCTION

TEG filed its Complaint against Max due to, inter alia, Max's material breaches of a Joint Venture Agreement under which the parties agreed to jointly create a new software system to be used by and sold to the United States Government. In response to TEG's Complaint, Max filed a 165-paragraph Counterclaim, alleging seven separate causes of action, including both breach of contract claims and a slew of torts. Max's Counterclaim is a transparent attempt to muddy the waters in what otherwise is a standard breach of contract case and impermissibly seek extraneous damages. TEG's files this Motion to Dismiss to narrow the dispute by eliminating Max's claims that lack support as a matter of law, including Counts I, II, V, VI, VII.

## FACTS ALLEGED IN COUNTERCLAIM

Max alleges as follows. Max is a company based in Indiana which specializes in government software applications. (Countercl., Dkt. 37, ¶¶ 2, 7, at 30-31) TEG is a company based in Virginia, which provides military technology and software to the United States Government. (*Id.* ¶¶ 8, 32, at 31, 35.) TEG contacted Brandon Fischer, Max's founder, via telephone to initiate the business relationship between TEG and Max. (*Id.* ¶¶ 18, 38, at 33, 36.) Max visited TEG in Virginia to develop the relationship, demonstrate Max's abilities, and meet with potential customers. (*Id.* ¶¶ 40-41, 45, at 37-38.)

On or about January 23, 2020, Max and TEG entered into a Joint Venture Agreement ("JVA") whereby, inter alia, TEG would create distribution channels to license the Haptic Federal software product to customers in the federal government. (*Id.* ¶¶ 2, 46, Dkt. 37-1, at 2-3.) Pursuant

1

to the JVA, any intellectual property created by the parties was to be co-owned by TEG and Max. (*Id.* Dkt. 37-1, at 2.) TEG was provided the exclusive distribution rights of Haptic Federal. (*Id.* ¶¶ 3, 47, at 2-3.) The JVA is a valid and enforceable agreement between the parties and Max brings a cause of action for breach of the JVA. (*Id.* ¶¶ 2, 5, 46-47, 51-56, 68, 137-142, at 2-5.)

Max further alleges that the parties executed a series of other contracts relating to Haptic Federal, including a Source Code License Agreement ("SCLA"), End User License Agreement ("EULA"), and a Certification Agreement, for which serve as the basis for Counts I, II, IV. (*Id.* ¶¶ 4, 118, 125-136, 143-148, Dkt. 37-2, 37-3, 37-4, at 2-5, 2-9, 2-9, 2-5.)

Max alleges the SCLA was signed by Max and TEG on or about March 30, 2021. (*Id.* ¶ 71, Dkt. 37-3, at 8) Max's performance under the SCLA was "[s]ubject to and conditioned on [TEG's] payment of Fees and compliance with all the terms and conditions of [the SCLA]." (*Id.* ¶ 72, Dkt. 37-3 at 2, § 2(a).) The SCLA states that TEG "shall pay [Max] the fee(s) ("Fee(s)") set forth in Exhibit A without offset or deduction." (*Id* at 2, § 4(a) (emphasis removed)). Exhibit A writes: "Fees waived until July 01, 2021. If this agreement remains in-effect beyond that date, the LICENSOR and LICENSEE agree to either: (a) establish an ongoing fee structure and amend this agreement; or (b) terminate this agreement." (*Id.* at 8, Ex. A.) Max alleges that the SCLA was terminated, at an unspecified time sometime after signing, based upon "failures in fee structure negotiations required by Exhibit A, Section 3 of the SCLA." (Countercl., Dkt. 37, ¶ 77, at 44.)

Pursuant to the EULA, Max grants "end users" a "non-exclusive, non-transferable, non-sublicensed, non-commercial and personal license to install and/or use the Product . . . for such time until either You or HAPTIC terminates this EULA. . . . THIS PRODUCT IS LICENSED TO YOU, NOT SOLD." (*Id.* ¶ 27, Dkt. 37-2, at 2, § 1.1.) The EULA prevents end users from

2

distributing, marketing, or using the product [Haptic Federal] for commercial purposes. (*Id.* ¶ 28, Dkt. 37-2 at 2, § 1.2.)

## LEGAL STANDARD

"Under Rule 12(b)(6), a party may move to dismiss a claim that does not state a right to relief." *Brookshire Mgmt. v. ADT LLC/Defenders, Inc.*, No. 1:22-cv-01086, 2022 U.S. Dist. LEXIS 177209, at *1 (S.D. Ind. Sept. 29, 2022). A counterclaim plaintiff must provide "fair notice of what the . . . claim is and the grounds upon which it rests." *Id.*; *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)).

On a motion to dismiss, the Court accepts all "well-pled facts as true and draw[s] all permissible inferences in favor of the plaintiff." *Id.* (citing *Active Disposal Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011)). The Court, however, "may not accept legal conclusions or conclusory allegations as sufficient to state a claim for relief." *Id.* (citing *McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011)); *see also Sanchez v. Hawk, Haynie, Kammeyer & Smith, LLP*, No. 1:22-cv-00406, 2023 U.S. Dist. LEXIS 149047, at *2-3 (N.D. Ind. Aug 24, 2023) (quoting *Twombly*, 550 U.S. at 555). "At the Rule 12(b)(6) stage, a district court may also consider exhibits attached to the [counterclaim]." *Brookshire Mgmt.*, 2022 U.S. Dist. LEXIS 177209, at *1 (citing *Thompson v. Ill. Dept. of Prof'l Reg.*, 300 F.3d 750, 753 (7th Cir. 2002)).

"Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Roberts v. State*, No. 1:23-cv-00828, 2024 U.S. Dist. LEXIS 61991, at *2 (S.D. Ind. Apr. 3, 2024) (quoting *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)).

3

**ARGUMENT**

**I.      Max Fails to State a Claim for Breach of Contract under the SCLA (Count I)**

In Count I, Max alleges a claim for breach of contract under the SCLA, which is attached to the Counterclaim as Exhibit 3. (Countercl., Dkt. 37, ¶¶ 125-130, at 53.). Max does not identify a specific portion of the SCLA for which TEG allegedly breached, and allegations relating to the SCLA are scant throughout the thirty-page Counterclaim.

Count I should be dismissed because the SCLA is not a valid and enforceable contract. Max may have alleged it so (*Id.* ¶ 126, at 53.), but this allegation is a conclusion of law, and therefore should be disregarded by the Court. *See McCauley*, 671 F.3d at 617. The SCLA is not a valid and enforceable contract for two reasons: (a) the SCLA represents an "agreement to agree" which is not enforceable; and (b) the SCLA does not provide for any consideration.[1]

**a.      The SCLA Constitutes an "Agreement to Agree"**

Fatal to Count I is the absence of certain terms regarding a fee structure in the SCLA. Instead of setting forth a fee structure, the SCLA simply suggests that the parties will negotiate payment at a later date. Under Indiana law, it is "well settled that a contract must be reasonably definite and certain to be enforceable." *Brookshire*, 2022 U.S. Dist. LEXIS 177209, at *17 (citing *Conwell v. Gray Loon Outdoor Mktg. Grp., Inc.*, 906 N.E.2d 805, 813 (Ind. 2009); *Zukerman v. Montgomery*, 945 N.E.2d 813, 819 (Ind. Ct. App. 2011); *Wolvos v. Meyer*, 668 N.E.2d 671, 675-676 (Ind. 1996) (stating that enforcement of incomplete or ambiguous writing creates a substantial danger that the court will enforce something neither party intended); *Wenning v. Calhoun*, 827 N.E.2d 627, 629 (Ind. Ct. App. 2005) ("In order to be enforceable, a contract must be reasonably definite and certain in its material terms so that the intention of the parties may be ascertained.");

---

[1] Section 12(f) in the SCLA writes that Indiana law shall apply to any legal action arising out of or relating to the SCLA.

4

*Mead Johnson & Co. v. Oppenheimer*, 458 N.E.2d 668, 670 (Ind. Ct. App. 1984) ("It is fundamental contract law that a contract is unenforceable if it is so indefinite and vague that the material provisions cannot be ascertained.")

In accordance with the foregoing contract principles, Indiana law holds that an agreement to agree is not a binding contract because it lacks definiteness, does not represent a mutuality of assent, and would not permit a court to ascertain if and when a party had performed. *See Brookshire*, 2022 U.S. Dist. LEXIS 177209, at *17-18 (dismissing breach of contract claim on a motion to dismiss where the contract was an agreement to agree and lacked sufficient definiteness) (citing *Druco Restaurants, Inc. v. Steak N Shake Enterprises, Inc.*, 765 F.3d 776, 783-84 (7th Cir. 2014) ("In order to be enforceable, an agreement must be sufficiently certain and definite in all of the essential terms so that a court may ascertain when and whether it has been performed."); *Mays v. Trump Indiana, Inc.*, 255 F.3d 351, 357-58 (7th Cir. 2001) (an agreement to agree is not a binding contract under Indiana law). This Circuit has consistently held that contracts must demonstrate an "intent to be bound and definiteness of terms" to be enforceable under Indiana law. *R3 Composites Corp. v. G&S Sales Corp.*, 960 F.3d 935, 941 (7th Cir. 2020) (holding that "[t]he phrase 'the parties will attempt to develop an agreement' on commissions is an unmistakable agreement to agree, not a binding contractual commitment").

Here, the SCLA represents an unenforceable agreement to agree and Count I must be dismissed with prejudice. Section 4(a) of the SCLA, titled "Fees," writes that "Licensee shall pay licensor the fee(s) ("Fee(s)") set forth in Exhibit A without offset or deduction." (Countercl., Dkt. 37-3, at 8, Ex. A.) (emphasis removed). Exhibit A of the SCLA reads: "FEES: Fees waived until July 1, 2021. If this agreement remains in-effect beyond that date, the [parties] agree to either: (a) establish an ongoing fee structure and amend this agreement or (b) terminate this agreement." (*Id.*)

Indeed, Max's performance was subject to TEG's payment of "Fees." (*Id.* ¶ 72, Dkt. 37-3 at 8, § 2(a).) Max and TEG do not agree to payment and fees under the SCLA, but rather, they agree to "establish" a fee structure months later. Max concedes as much by alleging that the SCLA was terminated based upon "failures in fee structure negotiations required by Exhibit A, Section 3 of the SCLA." (Countercl. ¶ 77, at 44).

The language in the SCLA has been held by the Seventh Circuit to "unmistakabl[y]" represent an unenforceable agreement to agree. *See R3 Composites*, 960 F.3d at 941. It is possible, of course, for parties to have subsequently come to an agreement relating to a fee structure after the execution of the SCLA. *See id.* ("Indiana law also recognizes that different writings—or writings and conversations, or writings and conduct, for that matter—may be combined to create a contract that is sufficiently definite to enforce") (citations omitted). The allegations in the Counterclaim, however, do not allege any such modification or subsequent conduct curing the legal deficiency of the SCLA and to the contrary, Max alleges the SCLA was terminated based upon a failure to reach agreement upon payment terms. Thus, the SCLA is unenforceable as an agreement to agree and Count I must be dismissed with prejudice.

**b.    The SCLA Lacks Valid Consideration**

Equally and independently fatal to Count I is that the SCLA lacks any valid consideration. "The existence of a contract is a question of law." *Peters v. Kendall*, 999 N.E.2d 1030, 1034 (Ind. Ct. App. 2013) (citing *Conwell*, 906 N.E.2d at 813). "Formation of a contract requires an offer and acceptance, consideration, and a meeting of the minds of the contracting parties." *Id*. The SCLA's only reference to fees (or any other type of consideration), is in Section 2 of the SCLA and Exhibit A. Section 2 of the SCLA simply states that Max's performance is conditioned on the payment of Fees in Exhibit A. (Dkt. 37-2, at § 2.) Exhibit A does not require the payment of any fees, but

6

rather suggests that the parties will establish a fee structure at a later date. (*Id.* at Ex. A.) Accordingly, the SCLA fails because it lacks any consideration. *See Hillesheim v. Andymark, Inc.*, No. 1:19-cv-04919, 2020 U.S. Dist. LEXIS 117823, at *7-9 (S.D. Ind. July 6, 2020).

The absence of consideration is not surprising. As alleged by Max, it was *already* obligated to provide TEG the Haptic Federal source code (the subject of the SCLA) pursuant to the JVA, which Max alleges is valid and enforceable. (*See* Countercl., Dkt. 37, ¶ 47, at 38, Ex. 1.) To be sure, a driving purpose of the JVA, which was entered into before the SCLA, was for TEG to be the exclusive distributor of Haptic Federal, and share in revenues with Max regarding certain technologies, including Haptic Federal. (*Id.*)

To the extent that Max is claiming that it is providing a version of Haptic Federal to TEG under the SCLA as some form of consideration, such a claim is unavailing. Under Indiana law, past consideration is insufficient to create a present legally enforceable contractual obligation. *See e.g.*, *Hillesheim v. Andymark, Inc.*, No. 1:19-cv-04919, 2020 U.S. Dist. LEXIS 117823, at *9 (S.D. Ind. July 6, 2020) (citing *Jackson v. Luellen Farms, Inc.*, 877 N.E.2d 848, 859 (Ind. Ct. App. 2007); *Brown v. Addington*, 52 N.E.2d 640, 642 (Ind. Ct. App. 1944)); *United States v. Bartle*, IP 01-0768, 2001 U.S. Dist. LEXIS 22934, at *13, n. 5 (S.D. Ind. Jan. 16, 2001) (citing *Comstock v. Coon*, 35 N.E. 909, 911 (Ind. 1893); *Field v. Alexander & Alexander of Indiana, Inc.*, 503 N.E.2d 627, 631 (Ind. Ct. App. 1987)).[2]

For the foregoing reasons, Count I fails to state a claim for which relief may be granted and should be dismissed with prejudice.

---

[2] If the Court were to apply Virginia law in assessing the validity of the SCLA, the result is the same. *See Blackson v. Clinchfield Coal Co.*, 2 Va. Cir. 212, 213 (Russell County, 1984) (past consideration cannot support present obligation) (citing *Davis v. Anderson*, 39 S.E. 588, 623 (Va. 1901)).

## II.     Max Fails to State a Claim for Breach of Contract under the EULA (Count II)

In Count II, Max alleges a claim for breach of contract under the EULA, which is attached to the Counterclaim as Exhibit 2. (Countercl. ¶¶ 132-136, Dkt. 37-2, at 6-9.). Count II should be dismissed because by Max's own allegations, the EULA is not binding upon TEG as TEG was never an "end user."

It is undisputed that the purpose behind the parties' business relationship was for Max and TEG to create software – though it is disputed who the owner of the software is – to market and sell to the U.S. government. (*See e.g.,* Countercl. ¶¶ 2, 3, 46-47, at 30, 38.) (TEG granted rights to be the "exclusive distributor/reseller of the Haptic Federal product into the federal market"). The EULA, an unsigned document, writes that "[Max] (or its licensors) grants You a non-exclusive, non-transferable, non-sublicensed, non-commercial and personal license to install and/or use the Product . . ." (*See* Countercl. ¶ 27-28, Dkt. 37-2, at 2-9, § 1.1). The intent of Max's and TEG's relationship was to develop, market, and sell software to agencies of the federal government. TEG's role was to assist in developing the software and to lead marketing and sales efforts to the "end user," the federal government, which, by definition, requires using and then transferring the software for a commercial use. This is memorialized in the JVA's language which writes that "TEG and MAX will partner together to deliver capabilities to the *end user* in the federal customer space." (*See* Dkt. 37-1, at 1) (emphasis added). Max's claims under the EULA are in direct contradiction to its claims under, and allegations relating to, the JVA. (*See e.g.,* Countercl. ¶¶ 46-47, at 38.). In sum, TEG was never intended to be or act as the end user and the EULA is not binding upon TEG. Count II should be dismissed with prejudice.

### III.   Max Fails to State a Claim for Common Law Fraud (Count V)

In Count V, Max alleges that TEG committed fraud by making misrepresentations relating to the various agreements between the parties which allegedly induced Max to partner with TEG. (*See* Countercl. ¶¶ 150-154, at 57-58.). Max's fraud claim fails because the duties between the parties are governed by the contract terms, as alleged by Max. Moreover, Max fails to plead fraud with specificity as required by Fed. R. Civ. P. 9(b). TEG submits that Virginia law applies to Max's fraud claim (along with Max's other tort claims), but under either Virginia or Indiana law, Max's fraud claim must be dismissed.

### a.   Virginia Law Applies and the "Source of Duty" Rule Bars Max's Claim

In a diversity suit, a federal court "applies the law of the state in which it sits, including the state's choice-of-law rules." *Vexol S.A. de C.V. v. Berry Plastics Plastics Corp.*, No. 3:15-cv-00055, 2016 U.S. Dist. LEXIS 115374, at *7 (S.D. Ind. Aug. 29, 2016) (citations omitted). Allegations of common law fraud assert a tort, and Indiana has traditionally followed the *lex loci delicti* rule in its choice of law as to tort actions. *Id.* at *8. The *lex loci delicti* rule "applies the substantive laws of the state where the last event necessary to make an actor liable for the alleged wrong takes place." *Id.* (citing cases); *see also CSX Transp., Inc. v. Zayo Grp., LLC,* No. 1:21-cv-02859, 2024 U.S. Dist. LEXIS 73500, at *69 (S.D. Ind. 2024) ("law of the state where the tort was committed applies.") (citing *Allen v. Great Am. Reserve Ins. Co.,* 766 N.E.2d 1157, 1164 (Ind. 2002)); *Wells v. Freeman Co.*, No. 3:21-cv-47, 2022 U.S. Dist. LEXIS 226599, at *25 (S.D. Ind. Dec. 16, 2022); *Utley v. N. Am. Van Lines*, IP 02-0249, 2002 U.S. Dist. LEXIS 21064, at *12 (S.D. Ind. Oct. 3, 2002).

Max lists a series of "false and material misrepresentations" allegedly made by TEG to support its fraud claim. (*See* Countercl., Dkt. 37, ¶¶ 150(a)-(d), at 57). Max also alleges that TEG

is a Virginia corporation (*Id.* at ¶ 8, at 31); that Max visited Virginia on numerous occasions to establish and develop a business relationship with TEG (*Id.* at ¶¶ 40, 45, at 37-38)[3]; and that TEG communicated with Max via telephone and e-mail while TEG was located in Virginia (*Id.* at ¶¶ 31, 38, 79, at 35-36, 44). Although not explicitly pled by Max, it can be reasonably inferred that TEG's alleged misrepresentations occurred in the Commonwealth of Virginia, particularly considering that TEG has never visited Indiana, nor is such an allegation pled. Therefore, Virginia law applies to Max's fraud count. *See e.g., Vexol S.A. de C.V.,* 2016 U.S. Dist. LEXIS 115374, at *7; *CSX Transp., Inc.,* 2024 U.S. Dist. LEXIS 73500 at *69.

The Supreme Court of Virginia has developed the "source of duty" rule to "safeguard against turning every breach of contract into an actionable claim for fraud." *Richmond Metro. Auth. v. McDevitt St. Bovis*, 507 S.E.2d 344, 348 (Va. 1998). In determining whether a cause of action sounds in contract or tort, "the source of the duty violated must be ascertained." *Id.* at 558. "[T]he duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of contract." *MCR Fed., LLC v. JB&A, Inc.*, 808 S.E.2d 186, 193 (Va. 2017) (citations omitted). Even in cases in which a putative tort is alleged separate from a contract, the tort can be "so inextricably entwined with contractual breaches that only contractual remedies are available." *Tingler v. Graystone Homes, Inc.*, 298 Va. 63, 86 (2019) (citing *Dunn Constr. Co. v. Cloney*, 682 S.E.2d 943, 944 (Va. 2009). Virginia courts routinely dismiss fraud claims based upon the source of duty as a matter of law. *See e.g., Vega v. E Trucking & Servs. LLC,* 103 Va. Cir. 401, 404 (Fairfax, 2019); *Lynnwood Tech Holdings LLC v. NR INT. LLC*, 2017 Va. Cir. LEXIS 52, at *142 (Fairfax, 2017).

---

[3] In Max's Answer to TEG's Counterclaim, Max also concedes that the parties convened and signed relevant documents in Virginia. *See* Max's Answer, Dkt. 37, ¶¶ 22, 27, 30, at 35-36.

The alleged misrepresentations which Max suggests support its fraud claim all relate to TEG's alleged contractual duties as referenced in Counts I-IV. (*See* Countercl., Dkt. 37, ¶¶ 150(a)-(d), at 57-58.). For example, Max alleges that TEG misrepresented the amount of sales TEG made for the years of 2020, 2021, or 2022, or that TEG falsely represented that it was "waiting on the government" for certain amounts of revenue from the sales of Haptic. (*Id.* at ¶¶ 150(a)-(b), at 57.). These allegations directly relate to TEG's alleged duties under the pled contracts, as made obvious that Max's explicit reference to one of the contracts. (*See id.* at ¶ 150(d), at 58.) ("by signing the Certification Agreement, TEG misrepresented to MAX . . ."). Even if the Court were to find that the alleged misrepresentations related to a duty owed separate and distinct from the contracts, Max's fraud claim still fails because the alleged breaches are so "inextricably entwined with the contractual breaches that only contractual remedies are available." *Tingler*, 298 Va. at 86. Indeed, without the existence of a valid contract, Max would have no actionable claim against TEG for allegedly misrepresenting its sales of Haptic Federal or describing Haptic as "unsellable." (*Id.* at ¶ 150(c), at 58.). Max does not allege a breach of a statutory or common law duty – for none exists – and its claim for fraud is firmly barred by Virginia law. *See McDevitt*, 256 Va. at 560.

### b.   Under Indiana Law, Max's Fraud Claim Still Fails

If the Court finds that Indiana law applies, Count V still fails because Indiana law similarly holds that a fraud count must be dismissed if based upon a contractual relationship.[4]

Under Indiana law, a party may not "repackage" or "restyle" a breach of contract claim as one for fraud. *See RAM Iron & Metal, Inc. v. Exeon Processors, LLC*, No. 1:22-CV-178, 2023

---

[4] The *lex loci delicti* rule can be overcome if the Court is persuaded that "the place of the tort bears little connection to this legal action." *Morgan v. Fennimore,* No. 1:09-cv-399, 2010 U.S. Dist. LEXIS 129224, at *6-7 (S.D. Ind. Dec. 3, 2010). The Court may consider: (1) the place where the conduct causing the injury occurred; (2) the residence or place of business of the parties; and (3) the place where the relationship is centered. *Id.* TEG urges that these factors, as applied to this case, do not overcome Indiana's presumption towards applying the *lex loci delicti* rule, particularly considering that the parties' business relationship was

U.S. Dist. LEXIS 85352, at *6-7 (N.D. Ind. May 16, 2023) (citing *Tobin v. Ruman*, 819 N.E.2d 78, 86 (Ind. Ct. App. 2004)); *Bayview Loan Servicing, L.L.C. v. Golden Foods, Inc.*, 59 N.E.3d 1056, 1068 (Ind. Ct. App. 2016); *see also Woodward v. Algie*, 2015 U.S. Dist. LEXIS 97375, at *9-10 (S.D. Ind. 2015) (dismissing tort claim on motion to dismiss when "[s]uch use would constitute making a tort of a contract breach."); *JPMCC 2006-CIBC14 Eads Parkway, LLC v. DBL Axel, LLC*, 977 N.E.2d 354, 364 (Ind. Ct. App. 2012), *reh'g denied, trans. denied*. This rule is sometimes referred to as the economic loss doctrine. *See ARC Welding Supply Co. v. Am. Welding & Gas, Inc.*, 3:16-cv-00173, 2017 U.S. Dist. LEXIS 147187, at *22 (S.D. Ind. Sept. 12, 2017).[5] A plaintiff who brings both a contract claim and fraud claim must plead facts to establish "(1) the breaching party committed the separate and independent tort of fraud; and (2) the fraud resulted in injury distinct from that resulting from the breach." *RAM Iron & Metal, Inc.*, 2023 U.S. Dist. LEXIS 85352 at *6-7 (quoting *Tobin*, 819 N.E.2d at 86); *see also Epperly v. Johnson*, 734 N.E.2d 1066, 1073 (Ind. Ct. App. 2000). The question is not only whether the plaintiff has pled an independent tort, but "also whether it has alleged an injury distinct from the breach." *Forest River Mfg., LLC v. Lexmark Enter. Software, LLC*, No. 3:16-CV-449, 2017 U.S. Dist. LEXIS 71019, at *7 (N.D. Ind. May 9, 2017).

The analysis of Max's fraud claim under Indiana law is similar to its claim under Virginia law, and the result is the same. Max's allegations of material misrepresentations all relate to duties which Max claims TEG has breached as a result of written agreements between the parties. (*See*

---

blossomed and largely transpired in Virginia, TEG is located in Virginia, and TEG has never been to Indiana.

[5] A "narrow exception" exists to the economic loss doctrine for fraud in the inducement claims "but only when the claim is extraneous, rather than 'interwoven' with the subject matter of the contract." *ARC Welding*, 2017 U.S. Dist. at *22. This narrow exception is inapplicable because Max has not brought a claim for fraud in the inducement, and as further discussed in this section and made clear by Max's allegations, Max's fraud claim is inextricably interwoven with its claims for breach of contract.

Countercl., Dkt. 37, ¶¶ 150(a)-(d), at 57-58.). For example, TEG's alleged misrepresentation of revenue obtained from Haptic Federal is one of the very same bases in which Max brings Count III for breach of the JVA. (*See e.g., id.* at ¶¶ 3, 5, 53-56, 90-94, 102, 108, 139(a), (e), (f), at 30, 39-40, 46, 48, 55.) Without the JVA, TEG would have no duty to share revenue with Max and therefore no independent duty exists to Max. Max has failed to plead a "separate and independent tort of fraud" and therefore its claim must be dismissed. *RAM Iron & Metal, Inc.,* 2023 U.S. Dist. LEXIS 85352 at *6-7; *McLeskey v. Invest*, No. 1:18-cv-02797, 2020 U.S. Dist. LEXIS 107283, at *10 (S.D. Ind. June 18, 2020).

Moreover, Max has not pled facts to establish that the alleged fraud resulted in an injury distinct from the alleged breaches of contract. *Id.* Rather, the damages that Max claims for fraud are identical to those claimed in its breach of contract counts. (*See id.* at ¶ 152, at 58.) ("As a result of and in reliance on TEG's misrepresentations, MAX moved forward with TEG as its business partner and continued to fulfill its obligations under the Joint Venture Agreement, Source Code License Agreement, End User License Agreement, Certification Agreement and other agreements between the parties."); *see Forest River Mfg., LLC,* 2017 U.S. Dist. LEXIS 71019, at *7 (citing *Greg Allen Constr. Co. v. Estelle,* 798 N.E.2d 171, 173 (Ind. 2003)). Max's fraud claims, seeking identical damages to its breach of contract claims, is an obvious attempt to impermissibly seek punitive damages and/or attorneys' fees. For these reasons, Max's claim for fraud fails and is properly dismissed with prejudice.

**c.      Max Fails to Plead Fraud with Particularity as Required by FRCP 9(b)**

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This heightened pleading standard "requires the complaint to contain more than the 'short and plain statement of the claim' described in Fed.

R. Civ. P. 8(a)(2)." *A.B. v. Wal-Mart Stores, Inc.*, No. 1:14-cv-00422, 2014 U.S. Dist. LEXIS 140764, at *3-4 (S.D. Ind. Oct. 3, 2014). A plaintiff ordinarily must describe the "who, what, when, where, and how" of the fraud – "the first paragraph of any newspaper story." *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009). Failure to plead with specificity makes a fraud claim ripe for dismissal. *See e.g., United States ex rel. Hanna v. City of Chicago*, 834 F.3d 775, 780 (7th Cir. 2016); *A.B.*, 2014 U.S. Dist. LEXIS 140764, at *3-4; *State ex rel. Harmeyer v. Kroger Co.*, 114 N.E.3d 488, 495 (Ind. Ct. App. 2018).

Max's fraud claims do not satisfy the heightened pleading standard of Fed. R. Civ. P. 9(b) or pertinent case law. Max does not allege who made the alleged misrepresentation of material fact, where or how they were made, or when they were made, besides vague references to the years of "2020, 2021, 2022, and 2023." (*See* Countercl. ¶¶ 150(a)-(b), at 57). Max's pleading deficiencies are very similar to those found in the cases of *Hanna* and *Harmeyer*, and for similar reasons, Max's claim for fraud are properly dismissed. *See United States ex rel. Hanna*, 834 F.3d at 780 (affirming dismissal of fraud claim when the plaintiff failed to plead time, place, and method of communication of alleged fraud, and beyond the allegation that the misrepresentations were made yearly, the plaintiff said "nothing more about timing."); *State ex rel. Harmeyer v. Kroger Co.*, 114 N.E.3d 488, 495 (Ind. Ct. App. 2018) (affirming dismissal of fraud claim, finding that because the plaintiff "did not particularly plead the time of the alleged fraud . . . we need not address the other elements required for a pleading of fraud.").

## IV.    Max Fails to State a Claim for Conversion (Count VI)

In Count VI, Max brings a claim for conversation based on TEG's alleged contract breaches. (*See* Countercl., Dkt. 37, ¶ 156, at 59) ("TEG intentionally exerted control over [Max's software]…in direct violation of the [SCLA], [EULA], and Certification Agreement."). Count VI

is simply a "repackaged" version of Max's contract claims, and whether reviewed under Virginia or Indiana law, Count VI fails as a matter of law.

### a.   Max's Claim for Conversion Fails Under Virginia Law

As previously discussed (*See supra* § III(a)), Indiana law holds that in a tort case, a federal court should apply the substantive law of the state in which the tort was committed. *See e.g., CSX Transp., Inc.,* 2024 U.S. Dist. LEXIS at *69 (citing *Allen*, 766 N.E.2d at 1164). Max alleges that TEG "intentionally exerted control over Max's proprietary software . . ." while also alleging that TEG is based in Virginia and operates from Virginia. (*See e.g.,* Countercl., Dkt. 37, ¶¶ 8, 45, 156, at 31, 38, 59.). Thus, it is proper to apply Virginia law to Max's claim for conversion.

Virginia's "source of duty" rule applies equally to conversion claims, meaning that a party cannot be liable for conversion when the act complained of is in contravention to a contractual term. *See Taveira v. Vieira*, 2015 Va. Cir. LEXIS 90, at *17 (Va. Beach, 2015). Indeed, the Supreme Court of Virginia "has suggested that conversion is an improper action in a breach of contract case, absent fraudulent possession of the property." *Wachovia Bank, N.A. v. Ranson Tyler Chevrolet, L.L.C.*, 73 Va. Cir. 143, 154 (Roanoke, 2007) (quoting *Williams v. Melendez, Gano and Faye*, 127 S.E. 82, 86 (Va. 1925)). In the present case, Max does not allege that TEG's alleged conversion resulted from a breach of an independent duty that TEG owed Max, but rather plainly asserts that TEG illegally exerted control over Max's software "in direct violation of the [SCLA], [EULA], and Certification Agreement." Thus, under Virginia law, Max's claim for conversion fails for similar reasons that its fraud claim fails and is properly dismissed. *See Jain v. Old Dominion Nat'l Bank,* No. 1:20-cv-1161, 2021 U.S. Dist. LEXIS 211636, at *5 (E.D. Va. Jan. 12, 2021) (dismissing conversion claim pursuant to Virginia's source of duty rule for "the sole and

exclusive remedy based on the performance of a contractual duty is in contract.") (citations omitted).

b. **Max's Claim for Conversion Fails Under Indiana Law**

If Indiana law applies to Max's claim for conversion – which Max seems to suggest by referencing Ind. Code § 35-43-4-3 – Max's claim still fails.

"Indiana does not allow claims for conversion in contract disputes." *Galveston, LLC v. Morris Inv., LLC*, No. 1:19-cv-02676, 2020 U.S. Dist. LEXIS 179157, at *15 (S.D. Ind. Sept. 29, 2020) (citing *Clark-Silberman v. Silberman*, 78 N.E. 3d 708, 715 (Ind. Ct. App. 2017); *Sinclair v. Banner Life Ins. Co.*, No. 1:22-cv-02253, 2023 U.S. Dist. LEXIS 237311, at *14 (S.D. Ind. Aug. 8, 2023) (granting judgment on the pleadings in favor of the defendant to conversion claim, noting that it would be an "extraordinary step" to allow "a conversion claim to proceed based on the same underlying facts as a breach of contract claim.") (citing *JMB Mfg. v. Child Craft, LLC*, 939 F. Supp. 2d 909, 917 (S.D. Ind. 2013)); *Korellis Roofing, Inc. v. N. Cross Roofing & Waterproofing, Inc.*, No. 2:17-CV-212, 2017 U.S. Dist. LEXIS 164196, at *3 (N.D. Ind. Oct. 4, 2017) (dismissing conversion claim because plaintiff has not "alleged any acts independent of the underlying contract dispute that could reasonably be construed as a separate and independent tort of conversion"). This well-established rule applies in equal force to conversion claims brought under Ind. Code § 35-43-4-3. *See e.g., Sinclair,* 2023 U.S. Dist. LEXIS 237311, at *11-13; *Ortega v. Forks RV,* No. 1:10-CV-227, 2012 U.S. Dist. LEXIS 7119, at *14 (N.D. Ind. Jan. 23, 2012); *French-Tex Cleaners, Inc. v. Cafaro Co.*, 893 N.E.2d 1156, 1167-68 (Ind. Ct. App. 2008).

Not only has Max not pled any acts independent of the underlying contract dispute to support its conversion claim, but Max explicitly attempts to support its conversion claim by alleging that TEG's control over Max's software was in "direct violation" to certain contracts. (*See*

Countercl., Dkt. 37, ¶ 156, at 59) Max's conversion claim is based upon TEG's allegedly illegal

use of the source code, which is the very subject of, at minimum, the JVA, or as alleged by Max,

the SCLA, EULA, and Certification Agreement. (*See e.g., id.* at ¶¶ 2-6, at 30.) Because Max's

conversion claim is premised on a failure to fulfill a contractual duty and relates to the same

underlying facts as the contract claims, it is properly dismissed, with prejudice. *See e.g., Sinclair,*

2023 U.S. Dist. LEXIS 237311 at *11-13.

### V.    Max Fails to State a Claim for Unjust Enrichment (Count VII)

In Count VII, Max brings a claim for unjust enrichment based upon the alleged benefit that

TEG received as a result of Haptic Federal software sales. (*See Id.* at ¶¶ 162-163, at 59.) Although

Max attempts to avoid dismissal of its unjust enrichment claim by pleading it "in the alternative"

to its breach of contract claims, Max's claim fails because it is based upon the very acts that support

those claims. Again, whether Virginia or Indiana law applies is irrelevant to the outcome.

### a.    Max's Unjust Enrichment Claim Fails Under Virginia Law

"The existence of an express contract covering the same subject matter of the parties'

dispute precludes a claim for unjust enrichment." *James G. Davis Constr. Corp. v. FTJ, Inc.*, 841

S.E.2d 642, 647 (Va. 2020) (citing *CGI Fed., Inc. v. FCi Fed., Inc.*, 295 Va. 506, 519 (2018)).

Max's unjust enrichment claim "reincorporates and re-alleges" all of its prior allegations, including

allegations that the parties have enforceable contracts which govern the usage and sales of Haptic

Federal. (*See* Countercl., Dkt. 37, ¶¶ 138-139; 144-146, at 55-57.) Max's unjust enrichment claim

simultaneously alleges that TEG was unfairly benefitted based upon access to Haptic Federal. (*See

id.* at ¶¶ 160-162, at 59). Max's attempt to plead unjust enrichment in the alternative is unavailing

considering that Max incorporates all of its allegations relating to the alleged enforceable

contractual obligations between the parties, including the JVA which expressly governs the usage

17

and sales of Haptic Federal. Virginia law bars Max's unjust enrichment claim because Max alleges

express agreements which cover the very same subject as its claim for unjust enrichment. *See e.g.,*

*A View Est. Trust v. Allstate Ins. Co.,* 109 Va. Cir. 26, 37-38 (Norfolk, 2021).

**b.    Max's Unjust Enrichment Claim Fails Under Indiana Law**

It is generally true at the pleading stage that "a party may plead claims in the alternative,"

including an unjust enrichment claim as an alternative to a breach of contract claim. *Guinn v.*

*Hoskins Chevrolet*, 836 N.E.2d 681, 704 (Ill App. Ct. 2005). But, when the unjust enrichment

claim is premised on a failure to fulfill contractual terms, this general rule does not apply, and

dismissal of the unjust enrichment claim is appropriate. *See id.* at 604-05, 836 N.E.2d at 704-05

(citing cases); *Shaw v. Hyatt Int'l Corp.*, 461 F.3d 899, 902 (7th Cir. 2006) (plaintiff failed to state

a claim for unjust enrichment where the claim rested on the breach of an express contract); *ARC*

*Welding Supply Co.*, 2017 U.S. Dist. LEXIS 147187, at *2; *Oyoque v. DePaul Univ.*, 520 F. Supp.

3d 1058, 1066 (N.D. Ill. 2021); *Team Impressions, Inc. v. Chromas Techs. Canada, Inc.*, No. 02

C 5325, 2003 U.S. Dist. LEXIS 2279, at *4 (N.D. Ill. Feb. 18, 2003).

Max's unjust enrichment claim is expressly based upon TEG's alleged failure to comply

with contractual terms, i.e., obtaining revenue and securing government contracts from the Haptic

Federal software. (*See e.g.,* Countercl., Dkt. 37, ¶ 162, at 59.). Max's attempt to plead its unjust

enrichment claim "in the alternative" is not permitted by Indiana law. *See Comentis, Inc. v. Purdue*

*Research Found.*, 765 F. Supp. 2d 1092, 1103 (N.D. Ind. 2011) ("[Plaintiff] may not seek unjust

enrichment *just in case* the contract does not afford it the relief it seeks . . ."); *Craftsman Chem.*

*Corp. v. IVC Indus. Coatings*, No. 2:15-cv-00425, 2017 U.S. Dist. LEXIS 10019, at *15 (S.D. Ind.

2017) ("A party cannot pursue equitable relief simply because its contract claim fails, without

alternatively alleging that there was either no contract on point or the contract at issue was

unenforceable.") (citations omitted). Max's unjust enrichment claim cannot stand because it expressly incorporates the preceding paragraphs from Max's Counterclaim, which include alleging the existence of multiple valid contracts between the parties pertaining to Haptic Federal source code. *SMC Corp. v. PeopleSoft U.S.A., Inc.*, 1:00-cv-1095, 2004 U.S. Dist. LEXIS 22811, at *9-10 (S.D. Ind. Oct. 12, 2004) (dismissing unjust enrichment claim, with prejudice, when claim incorporated allegation of a valid, binding contract). Max's unjust enrichment claim is properly dismissed, with prejudice.

**VI.   Max's Claim for Punitive Damages, Attorneys' Fees, and Costs Must be Stricken**

Max is attempting to turn a breach of contract into something more to justify a plea for punitive damages, attorneys' fees and costs. Both Virginia and Indiana law follow the American Rule, that is, absent a specific contractual or statutory provision, attorneys' fees are not recoverable. *See Bolton v. McKinney,* 855 S.E.2d 853, 855-56 (Va. 2021); *Event Holding, LLC v. Kidz Heaven, LLC*, 202 N.E.3d 441, 2022 Ind. App. LEXIS 417, at *9-10 (Ind. Ct. App. 2022). Here, none of the contracts over which Max sues provide for recovery of attorneys' fees. (*See* Countercl., Exs. 1-3, 6). Irrespective of the Court's ruling on TEG's Motion to Dismiss, Max's claim for attorneys' fees should be stricken.

Similarly, both jurisdictions do not generally permit recovery of punitive damages in breach of contract actions. *See Kamlar Corp. v. Haley*, 299 S.E.2d 514, 518 (Va. 1983); *Miller Brewing Co. v. Best Beers of Bloomington, Inc.*, 608 N.E.2d 975, 981 (Ind. 1993). Therefore, if the Court dismiss Max's tort claims (Counts V-VI), its claim for punitive damages necessarily fails. However, even if Max's tort claims are not dismissed, Max's claim for punitive damages still fail because Max's allegations do not demonstrate a level of wantonness or maliciousness to support such damages. *See Hibschman Pontiac, Inc. v. Batchelor,* 340 N.E.2d 377, 380 (Ind. Ct.

App. 1976) (punitive damages only awarded when conduct is "malicious, oppressive, or grossly fraudulent, or conduct evidencing a wanton disregard of the rights of others or heedless disregard of the consequences."); *Green v. Ingram*, 608 S.E.2d 917, 923 (Va. 2005) (punitive damages require "willful and wanton conduct").

## CONCLUSION

For the foregoing reasons, and those articulated at any oral argument on the matter, Plaintiff Triangle Experience Group, Inc. respectfully requests that this Honorable Court grant TEG's Motion to Dismiss, dismiss Counts I, II, V, VI, and VII, with prejudice, strike Max Mind LLC's claim for punitive damages, attorneys' fees, and costs, and award TEG any and all further relief as may be just and proper.

Dated: June 21, 2024                    Respectfully submitted,

Richard D. Kelley, Esq., *admitted pro hac vice*
Raighne C. Delaney, Esq., *admitted pro hac vice*
Stephen D. Caruso, Esq., *admitted pro hac vice*
BEAN, KINNEY & KORMAN, PC
2311 Wilson Boulevard, Suite 500
Arlington, VA  22201
Tel: (703) 525-4000
Fax: (703) 525-2207
rkelley@beankinney.com
rdelaney@beankinney.com
scaruso@beankinney.com

Marc T. Quigley, Atty. No. 21054-53
KRIEG DeVAULT LLP
12800 North Meridian Street, Suite 300
Carmel, Indiana  46032
Tel: (317) 566-1110
Fax: (317) 636-1507
mquigley@kdlegal.com

Alexandra Wilson Pantos, Atty. No. 37003-49
KRIEG DeVAULT LLP
One Indiana Square, Suite 2800
Indianapolis, Indiana  46204
Tel: (317) 636-4341
Fax: (317) 636-1507
awilson@kdlegal.com

*Attorneys for Triangle Experience Group, Inc.*