UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TRIANGLE EXPERIENCE GROUP, INC., | ) |
| *Plaintiff/Counterclaim Defendant,* | ) ) ) |
| v. | ) Case No.: 1:24-cv-00650-JPH-MG ) |
| MAX MINDS, LLC, | ) JURY TRIAL DEMANDED ) |
| *Defendant/Counterclaim Plaintiff.* | ) ) |

**FIRST AMENDED COMPLAINT**

Triangle Experience Group, Inc. ("TEG"), by counsel, for its First Amended Complaint against Max Minds, LLC ("Max") alleges as follows.

**SUMMARY**

1. TEG and Max entered into a Joint Venture Agreement attached as **Exhibit 1** (the "JVA"). Under the JVA, the parties were to collaborate on creating a new software system, to be known as "Haptic," which could be used by both the federal government (the "Haptic Federal" version) and commercial entities. Under the JVA, the parties would co-own the technology created by the collaboration, and the parties would share 50/50, the revenues generated by their collaboration, with some exceptions.

2. Max breached the JVA by: (1) creating a defective product for the federal government space that failed catastrophically; (2) failing to provide TEG with sufficient updates of the Haptic Federal software; (3) failing to create a separate commercial branch or version of the software (a "Haptic Commercial" version); (4) using the funding provided by TEG to update the software into a product known as "Alleo," which Max sought to conceal from TEG; and (4)

refusing to share with TEG the revenues generated by Max's sales of Haptic, Haptic Federal and/or Alleo, all of which were essentially the same product with different updates.

3. Max breached its warranty of implied fitness for a particular purpose because the software failed catastrophically.

## PARTIES

4. TEG is a Virginia stock corporation with a principal place of business in Ashland, Virginia, 11182 Hopson Road, Suite A, Ashland, Virginia 23005. TEG specializes in providing services to the federal government.

5. Max is an Indiana limited liability company, with a principal place of business in Carmel, Indiana, 12400 North Meridian Street, Suite 175, Carmel, Indiana 46032. Max was created on May 3, 2018. Upon information and belief, Max's sole member is Brandon Fischer ("Fischer"), who is domiciled in Indiana.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to 28 USC § 1332(a)(1) because this matter involves claims between citizens of different states where the amount in controversy exceeds $75,000.

7. Venue is proper in this Court pursuant to a Court Order from the United States District Court for the Eastern District of Virginia.

8. Max is subject to personal jurisdiction in this Court because its principal place of business is located in this judicial district and it regularly transacts business in this judicial district.

## FACTS

### A. TEG and its Customers

9. TEG was formed in 2012 as a service-disabled veteran owned small business that provides services and support to the United States government pursuant to government contracts.

10. Since its inception, TEG has successfully provided cutting edge military technology to the United States government through various contract vehicles and has enjoyed fruitful and lasting relationships with several customers within the Department of Defense.

11. One of TEG's premier services provided to its government customers is an operating system originally known as "C4MAP" – "Comprehensive Collaborative Command & Control Mission Application Platform."

12. C4MAP is a collection of commercial off the shelf ("COTS") software components which integrates multiple mission command platforms and collaboration tools into one common operational picture ("COP").

13. C4MAP provides a globally military-hardened, distributed, synchronized, uniform collaborative, highly secure operation center. In essence, C4MAP provides the fusion and interconnection of information on a single screen, which has limitless benefits to the United States government and its Department of Defense.

14. C4MAP is also known as a "Virtual Joint Operations Center" or "VJOC" capability in the Department of Defense ("DoD") and intelligence community.

15. C4MAP, or VJOC, is a server-based collaborative workspace that uses a browser interface to enable users to collaborate in real time. VJOC has screensharing capabilities that allow users to select the display window of an individual program on their workstation and share it live in real time to the VJOC workspace.

16. The VJOC workspace is an infinite canvas of screen real estate that operates synchronously for all members in real-time.

17. The benefits of VJOC to the United States Department of Defense are essentially limitless and incredibly valuable.

18. TEG has enjoyed a long history of providing C4MAP/VJOC and its capabilities to the Department of Defense.

19. C4MAP, like any operating system, requires a source code for configuration, installation, operation, integration and deployment to deliver capabilities.

20. Initially, C4MAP was powered by a source code known as "Synthesis," which was owned by a company known as Prysm.

21. Fischer was formerly a senior software developer at Prysm with the title Vice President.

22. While a Prysm employee, Fischer attended multiple presentations of C4MAP, during which time TEG and its engineers demonstrated C4MAP and its capabilities.

### B. TEG and Max Collaborate in a Joint Venture

23. In the spring of 2018, TEG and Fischer (who was no longer employed by Prysm) began exploring the opportunity to work together, with Fischer providing the source code to power a C4MAP/VJOC operation system for TEG. In May 2018, Fischer founded Max to provide general software solutions to customers.

24. On July 2, 2019, after his non-competition period with Prysm had expired, Fischer told TEG that he was coming to Washington, DC and would like to meet with TEG.

25. At this time, Max did not have a complete, working software product.

26. On July 17, 2019, TEG and Max entered into a mutual non-disclosure agreement which is attached as **Exhibit 2** (the "MNDA"). Under the MNDA, the parties promised to keep each other's information confidential for five years.

27. After entering into the MNDA agreement, TEG brought Fischer/Max to a federal government lab in Suffolk, Virginia. TEG then showed Fischer the critical information necessary to operate a virtual collaborative workspace. Fischer explained to TEG that he wanted TEG to hire and/or partner with Max to build and improve TEG's C4MAP system with new software to deliver C4MAP's capabilities.

28. After July 2019, Fischer used the confidential information provided to him by TEG and worked with TEG's employees to create a beta version of a new software, known as "Haptic."

29. On October 5, 2019, Fischer emailed TEG and invited TEG to virtually test the new software. After October 5, 2019, Fischer and TEG's staff worked to improve Haptic, as detailed by the chat log of activity, albeit doing so without any agreement other than the MNDA.

30. On November 5, 2019, Fischer met with TEG in Chantilly, Virginia to discuss the new capability moving forward with funding for continued development of the "Haptic" software.

31. On January 23, 2020, TEG and Max executed the JVA identified previously as **Exhibit 1**.

32. Pursuant to the JVA, TEG would make a series of payments to Max and, in return, Max would "create and maintain" a branch of the Haptic source code, called "Haptic Federal." So long as TEG hit certain sales goals, TEG would enjoy exclusive rights to provide Haptic Federal to the federal government.

33. The parties agreed that Max would provide TEG with software updates no less than once every three months.

34. The parties agreed that any intellectual property resulting from custom software development paid for by TEG would be co-owned by TEG and Max.

35. The JVA further provided that the parties would share 50/50 revenue on total sales of Haptic Federal product and user license sales in the federal space, with certain exceptions, as well as total sales in the non-federal space when using co-owned IP, with certain exceptions.

36. Throughout the time period beginning in 2019 and continuing thereafter, TEG and Max worked together to create and develop the Haptic software. At all times, Haptic was intended to be and was a joint work of both TEG and Max.

37. The Haptic software and source code, including all of its versions or branches, are co-owned by TEG and Max.

## C. **TEG Generates Customer Interest But Max's Performance Falters**

38. In May 2020, TEG demonstrated the new C4MAP, powered by Haptic, to the Commanding General of the U.S. Army's XVIII Airborne Corps. The success of this demonstration led to the US Army sponsoring an IATT (Interim Authority To Test) and the first large-scale fielding and testing of the beta version of C4MAP, powered by Haptic.

39. From August 2020 through October 2020, the U.S. Army tested the new C4MAP powered by Haptic. This testing resulted in the identification of approximately 250 fixes that were needed to solve various problems.

40. Despite the large number of problems, the Army viewed C4MAP powered by Haptic as a "game changer," and that led to new challenges.

41. In October 2020, C4MAP, powered by Haptic, was used by XVIII Airborne Corps for testing and fielding of the new capability. The new capability was recommended by XVIII

Airborne Corps by the Joint Special Operations Command, who had previously tested the capability.

42. In February 2021, TEG invited Fischer to Ft. Hood, Texas so that he could see how the U.S Army intended to use C4MAP powered by Haptic. Fischer stated that he was "humbled and profoundly inspired."

43. In March 2021, TEG submitted the Haptic software to the U.S. government for evaluation. Because TEG was able to prove the value of C4MAP across the DoD during the initial IATT, the government decided to obtain a full ATO (Authority To Operate) on a classified network.

44. In August 2021, TEG received an email from John McDonald ("McDonald") of Next Studios. Even though McDonald was not a party to the MDNA, McDonald told TEG that Max had asked him to manage processes.

45. In October 2021, Fischer informed TEG that he was developing a use case to use with potential investors. Fischer failed to state whether he had provided an NDA to potential investors or had informed them that TEG was Haptic's co-author and co-owner, or otherwise disclose Max's partnership with TEG.

46. In November 2021, to accredit the software, the U.S. Army purchased the fielded version of C4MAP powered by Haptic, which was known as version 3.1.17. This was the last version that functioned properly.

47. On December 13, 2021, TEG learned, by logging on to c4map.hap.tc, that Max had covertly changed Haptic's name to Alleo. When questioned, Fischer admitted that Alleo was simply a name change.

48. In a call on December 15, 2021, although TEG had provided substantial funding to Max to fix the problems identified in testing with the federal government, Fischer indicated that he did not want to do any more custom engineering projects for TEG, unless there was a specific well-defined project. He noted that the "ownership of the IP" had muddied the waters. When asked about the name change of Alleo, Fischer responded that he had given TEG too much access. When Fischer was questioned about the need for a separate branch of Haptic, namely, "Haptic Federal," Fischer responded that that was his intent, "when that time comes." He had not made any such division yet, because it was too expensive.

49. Whatever Fischer's intention, on April 1, 2022, Max began advertising Alleo to government contractors, instead of Haptic.

50. For the next year, the parties continued to work together, with TEG reporting critical bugs and software failures to Max, including, but not limited to, the following: on April 5, 2022 (Presentation mode), April–September 2022 (Dumpster Blender), and November 2022 (Configuration Tool). As a result of these critical failures, TEG did not make additional sales.

51. On December 8, 2022, TEG provided Fischer with a document prepared by the U.S. Central Command that outlined the government's concerns and priorities. Max has never responded to this document.

52. As a result of a test on January 4-5, 2023, another critical failure was identified in the software's "Live Notepad," which oversaturated the application and customer network with message traffic.

53. On January 10, 2023, the software failed to work as intended.

54. On January 15, 2023, the DoD began turning off aspects of the software, like Live Notepad, that were causing problems.

55. On January 26, 2023, during a dress rehearsal for a full DoD exercise, users were not able to screen share, play video, or take leader control of the platform due to a problem in the Haptic code.

56. On January 27-31, 2023, TEG discovered that Max had unilaterally, without informing TEG, reduced the bitrate for video share quality since providing the 3.1.17 version. Max then delivered a hot fix but said that it had not been able to test it.

57. On February 8, 2023, TEG's system maintenance detected new critical bugs and failures.

58. On February 22, 2023, TEG received the newest version from Max (version 3.1.21.4). TEG immediately identified critical failures that made the software not useable.

59. On March 30, 2023, the U.S. government scanned version 3.1.21.3 and identified more than 50 critical errors.

60. On May 5, 2023, TEG notified Max that it still does not have a product that it can effectively sell to the U.S. government.

61. Despite paying millions of dollars to Max for engineering services and custom software development, losing millions of dollars in attempting to repair Max's failed efforts, and losing millions of dollars in sales, TEG discovered that Max was actually releasing monthly updates to its Alleo product but failing to provide any new features and fixes to the Haptic/Haptic Federal product. In other words, Max was taking money from TEG under the JVA, applying the funds to update and better Alleo, neglecting its obligations under the JVA concerning Haptic, and diverting profits from TEG that would otherwise be due regarding sales of Alleo.

62. Additionally, TEG learned that Max had sold the Alleo software to one or more federal government customers, even though TEG enjoyed exclusivity in the federal government space under the terms of the JVA.

63. On information and belief, in March and April 2024, Max filed applications for and obtained copyright registrations for various versions of the Haptic software, including Registration No. TXu 2-412-490, Registration No. TXu 2-419-714, Registration No. TXu 2-419-718, and Registration No. TXu 2-425-362.

64. Max improperly failed to list TEG as a co-author and co-claimant in each of these registrations.

## COUNT I (Declaratory Judgment of Joint Authorship/Co-Ownership)

65. TEG repeats and realleges paragraphs 1 through 64 of this First Amended Complaint as if fully set forth herein.

66. As a result of the acts described in the preceding paragraphs, there is an actual controversy within the jurisdiction of this Court of sufficient immediacy and reality to warrant the issuance of a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

67. The software at issue in this matter is all the same, whether it is called Haptic, Haptic Federal, Haptic Commercial or Alleo.

68. Since at least as early as July 2019, TEG and Max worked together to create and develop this software.

69. Throughout the parties' relationship and collaboration on developing this software, TEG and Max objectively manifested their shared intent to work together in the creation of the software.

70. Throughout the parties' relationship and collaboration on developing this software, TEG had control and decision-making authority over the software and how contributions to the software would be incorporated.

71. Throughout the parties' relationship and collaboration on developing this software, TEG contributed independently copyrightable material to the software.

72. The software is a "joint work" within the meaning of the Copyright Act.

73. As such, TEG is a joint author or co-author of the software and TEG is a co-owner of all copyright interests in the software entitled to one-half of the undivided interests in the software.

74. A judicial declaration is necessary and appropriate so that TEG may confirm its ownership rights in the software.

75. TEG is entitled to a judicial declaration that: (1) the software is a joint work under the Copyright Act; (2) TEG is a co-author of the software; (3) TEG is co-owner of the software and all copyright interests in the software, sharing one-half of the undivided interests with Max; and (4) TEG is entitled to a one-half share of all revenue received by Max from all sales or licensing of the software.

## COUNT II (Breach of Contract – JVA)

76. TEG repeats and realleges paragraphs 1 through 64 of this First Amended Complaint as if fully set forth herein.

77. Max breached the JVA by failing to create and maintain a functioning source code.

78. As a direct and proximate result of Max's conduct alleged herein, TEG has been harmed and is entitled to direct and consequential damages in the amount of $90 million or such other amount to be determined at trial.

11

## COUNT III (Breach of Warranty)

79. TEG repeats and realleges paragraphs 1 through 64 of this First Amended Complaint as if fully set forth herein.

80. Max breached the implied warranty of fitness for a particular purpose by failing to create and maintain a functioning source code for the purpose of TEG's federal government customers.

81. As a direct and proximate result of Max's conduct alleged herein, TEG has been harmed and is entitled to direct and consequential damages in the amount of $90 million or such other amount to be determined at trial.

## COUNT IV (Breach of Contract – JVA)

82. TEG repeats and realleges paragraphs 1 through 64 of this First Amended Complaint as if fully set forth herein.

83. Max breached the JVA by making sales of the software and failing to provide TEG with 50 percent of the revenues of Max's sales or licensing of the software.

84. As a direct and proximate result of Max's conduct alleged herein, TEG has been harmed and is entitled to damages in the amount of $10 million or such other amount to be determined at trial.

85. TEG is also entitled to an accounting of Max's revenue received from all sales or licensing of the software and a constructive trust with respect to TEG's 50 percent share of such revenue.

## COUNT V (Breach of Contract – MNDA)

86. TEG repeats and realleges paragraphs 1 through 64 of this First Amended Complaint as if fully set forth herein.

87. Max breached the MNDA by providing TEG's confidential information to third parties, including vendors, investors, and other parties, without TEG's permission.

88. As a direct and proximate result of Max's conduct alleged herein, TEG has been harmed and is entitled to damages in the amount of $10 million or such other amount to be determined at trial.

## COUNT VI (Declaratory Judgment - Cancellation of Copyright Registrations)

89. TEG repeats and realleges paragraphs 1 through 64 of this First Amended Complaint as if fully set forth herein.

90. As a result of the acts described in the preceding paragraphs, there is an actual controversy within the jurisdiction of this Court of sufficient immediacy and reality to warrant the issuance of a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

91. The software is a "joint work" within the meaning of the Copyright Act.

92. As such, TEG is a joint author or co-author of the software and TEG is a co-owner of all copyright interests in the software entitled to one-half of the undivided interests in the software.

93. Any copyright registrations obtained by Max for the software that do not include TEG as a co-author and co-claimant are, therefore, inaccurate and incomplete.

94. A judicial declaration is necessary and appropriate so that TEG may confirm its ownership rights in the software and its appropriate inclusion as a named co-author and co-owner/co-claimant in any copyright registrations covering the software.

## DEMAND FOR RELIEF

WHEREFORE, TEG respectfully requests judgment against Max as follows:

1. Adjudging and declaring that (1) the software is a is a single joint work within the meaning of the Copyright Act regardless of whether it is called Haptic, Haptic Federal, Haptic Commercial or Alleo; (2) TEG is a co-author of the software; and (3) TEG is co-owner of the software and all copyright interests in the software, sharing one-half of the undivided interests with Max.

2. Adjudging and declaring that TEG is entitled to a one-half share of all revenue received by Max from all sales or licensing of the software.

3. Ordering Max to provide an accounting of Max's revenue attributable to sales or licensing of the software.

4. Ordering Max to cancel any and all copyright registrations in which it is listed as the sole author and/or claimant for rights in the software pursuant to the procedure set forth in Section 1807.4(E) of the Compendium of the U.S. Copyright Practices. U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES § 1807.4(E) (3d ed. 2021).

5. Awarding TEG all damages sustained by TEG as a result of Max's unlawful conduct alleged herein, in an amount to be proven at trial.

6. Awarding TEG interest, including pre-judgment and post-judgment interest, on the foregoing sums.

7. Awarding TEG all fees (including attorneys' fees as appropriate), expenses, and costs associated with this action; and

8. Awarding TEG such other and further legal or equitable relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial in this action for all claims so triable.

Dated: October 4, 2024                    Respectfully submitted,

   /s/ Richard D. Kelley
Richard D. Kelley, *admitted pro hac vice*
Raighne C. Delaney, *admitted pro hac vice*
Stephen D. Caruso, *admitted pro hac vice*
Samuel J. Banks, *admitted pro hac vice*
Kandis M. Koustenis, *admitted pro hac vice*
**BEAN KINNEY & KORMAN, PC**
2311 Wilson Boulevard, Suite 500
Arlington, VA 22201
Tel: (703) 525-4000
Fax: (703) 525-2207 (Fax)
rkelley@beankinney.com
rdelaney@beankinney.com
scaruso@beankinney.com
sbanks@beankinney.com
kkoustenis@beankinney.com

Alexander P. Orlowski, Atty. No. 30794-29
Amanda Jane Gallagher, Atty. No. 32662-79
**BARNES & THORNBURG LLP**
11 South Meridian Street
Indianapolis, IN 46204
Tel: (317) 566-1110
Fax: (317) 636-1507
alexander.orlowski@btlaw.com
amanda.gallagher@btlaw.com

*Counsel for Triangle Experience Group, Inc.*