UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TRIANGLE EXPERIENCE GROUP, INC., | ) |
| *Plaintiff*, | ) ) ) |
| v. | ) ) Case No. 1:24-cv-00650-JPH-MG |
| MAX MINDS, LLC, | ) ) ) |
| *Defendant*. | ) |

**TRIANGLE EXPERIENCE GROUP, INC.'S OPPOSITION TO
MAX MINDS, LLC'S MOTION TO DISMISS
COUNTS I AND VI OF THE AMENDED COMPLAINT**

Plaintiff Triangle Experience Group, Inc. ("TEG"), by counsel, submits this brief in opposition to Defendant Max Minds, LLC's ("Max") motion to dismiss Counts I and VI of TEG's First Amended Complaint.

**INTRODUCTION**

In Counts I and VI of its First Amended Complaint, TEG seeks declaratory relief relating to TEG's co-ownership and co-authorship of the software in dispute. Throughout the Amended Complaint, TEG alleges that it is a co-author and co-owner of the software based upon its substantive contributions to the product and as memorialized in the signed Joint Venture Agreement ("JVA") between the parties. In addition to the parties' agreements and understandings under the JVA, TEG alleges that it helped create, edit, and adjust the software and its source code. TEG further alleges that it contributed its own preexisting software, C4MAP, which served as the foundation for the parties' jointly created product.

Max attempts to short circuit this litigation by arguing, incorrectly, that TEG is required to prove its joint authorship and co-ownership allegations at the motion to dismiss stage rather than

provide a short and plain statement of those claims. Max asks the Court to adjudicate this case far in advance of trial, without giving TEG the benefit of discovery or the ability to present evidence. TEG's Amended Complaint sufficiently places Max on notice of TEG's claims, and Max's motion is properly denied.

## MATERIAL FACTS ALLEGED IN THE AMENDED COMPLAINT

Since 2012, TEG has provided software services and products to the federal government. (Am. Compl., Dkt. 90 ¶¶ 9-11, 18.) Beginning in the spring of 2018, Max approached TEG about partnering together, as Max wanted to work with TEG to "build and improve" on TEG's existing software system known as C4MAP. (*Id*. ¶¶ 23-25, 27.) When TEG and Max first began their collaboration, TEG contributed the C4MAP software, which formed the basis for the parties' jointly created software since Max did not have a complete, working software program at that time. (*Id*. ¶¶ 11, 18-20, 24-25.) Throughout the partnership, and beginning no later than July 2019, TEG and Max worked together to create and develop the new software, which was detailed in a chat log of activity. (*Id*. ¶¶ 26-29, 36, 68-71.) TEG contributed independently copyrightable material to the software and controlled the power to decide how the parties' respective contributions would be incorporated into the joint software product. (*Id*. ¶¶ 70-71.) TEG (and not Max) also consistently tested and identified defects in the software (on its own and through its government customers) and identified corrections and improvements in and to the software, including its source code. (*Id*. ¶¶ 38-43, 48, 50-52, 57-61.)

In the JVA executed in early 2020, TEG and Max memorialized their ongoing collaborative efforts to develop and sell the new software system to the government. (*Id*. ¶¶ 1, 31; JVA, Dkt. 90-1.) Under the JVA, the parties "partner[ed] together to deliver capabilities to the end user in the federal customer space" using a "[c]ollective approach to sell, deliver, and sustain a collaborative

2

capability to the US Government." (Dkt. 90-1 at 2.) TEG and Max agreed to co-own the software and share equally in revenues generated from US Government customers of the software. (Dkt. 90 ¶¶ 1, 34-35; Dkt. 90-1 at 3-4.) The JVA further memorialized the parties' status as co-owners of the software by providing for the disposition of the source code in the event of a third-party acquisition or if either TEG or Max ceased to be a viable company. In the event the parties agreed on the terms of the sale of the software and its source code to a suitable buyer, they would split the proceeds. (Dkt. 90-1 at 4.) And, if either TEG or Max should cease to be a viable company, the non-viable party would convert their half of the ownership of the source code to the party with continuing viability. (*Id*. at 3.)

Despite TEG's independent, significant contributions to the software and the parties' written agreement memorializing the parties' co-ownership of the software, Max filed copyright registrations for various versions of the software without listing TEG as a co-author or co-claimant. (Dkt. 90 ¶¶ 63-64, 93.) Max, through its improper copyright registrations and other means, has made clear its intent to deny TEG its rights as a joint author and joint owner of the software, demonstrating the existence of an actual controversy. Declaratory relief under Counts I and VI of the Amended Complaint is necessary and appropriate. (*Id*. ¶¶ 74, 94.)

## **LEGAL STANDARD**

To state a claim, the complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement requirement under Rule 8(a)(2) serves to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The complaint must contain sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). In determining

the sufficiency of a complaint under the plausibility standard, courts "accept as true all of the well-pleaded facts in the complaint and draw reasonable inferences in favor of [the] plaintiffs." *Hill v. Serv. Emps. Int'l Union*, 850 F.3d 861, 863 (7th Cir. 2017). In ruling on a Rule 12(b)(6) motion, district courts may also consider documents attached to the pleadings without converting the motion into a motion for summary judgment, as long as the documents are referred to in the complaint and are central to the claims. *See Runnion v. Girl Scouts of Greater Chi. & Nw. Indiana*, 786 F.3d 510, 528 n.8 (7th Cir. 2015).

## ARGUMENT

I. **The Amended Complaint Properly States Claims for Declaratory Relief Under Counts I and VI Because TEG Pleads Facts Sufficient to Demonstrate its Status as a Joint Author and Joint Owner of the Software.**

Both Counts I and VI of the Amended Complaint allege an actual, immediate controversy between the parties with respect to TEG's co-authorship and co-ownership of the software warranting a judicial declaration of TEG's rights in the software. TEG's factual allegations in support of this controversy and request for declaratory relief are grounded in (1) the terms and circumstances surrounding the JVA and (2) the Copyright Act's protection of joint authors of a joint work.

Max's motion contests the sufficiency of these allegations solely on the ground that TEG has failed to plead sufficient facts to identify its independently copyrightable contributions to the software as a joint work under the Copyright Act (which Max implies must be in the form of written source code only).[1] Although contributions of copyrightable expression to software are not limited to writing source code, the Amended Complaint is replete with factual allegations that TEG

---

[1] Max does not contest the sufficiency of the Amended Complaint's allegations concerning the parties' intent to create a joint work. Those allegations are evident. (*See, e.g.*, Dkt. 90 ¶¶ 1, 34-35, 69; Dkt. 90-1 at 2-4.)

4

made independently copyrightable contributions to the software in the form of source code and other important and legally cognizable contributions.

Section 101 of the Copyright Act defines "joint work" as "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101. The contributions of each party to the final product need not be equal in order for the parties to be joint authors. 1 Nimmer on Copyright, § 6.07 (2024). But, unless the parties agree differently in writing, the interests are divided equally between the joint authors. 17 U.S.C. § 201(a).

"In general, individuals are co-authors of a work only where they (1) intend to create a joint work; and (2) contribute independently copyrightable material." *Janky v. Lake Cnty. Convention & Visitors Bureau*, 576 F.3d 356, 361 (7th Cir. 2009) (citing *Erickson v. Trinity Theatre, Inc.,* 13 F.3d 1061, 1071 (7th Cir. 1994)).[2] Despite Max's suggestion to the contrary, independently copyrightable contributions in the software context include more than merely writing the source code. Copyright protection extends beyond the literal code to a software program's structure, sequence and organization. *Whelan Assocs., Inc. v. Jaslow Dental Lab'y, Inc.*, 797 F.2d 1222, 1248 (3rd Cir. 1986) (creative expression includes expression of operation)*; see also Computer Assocs. Int'l. v. Quest Software, Inc.*, 333 F. Supp. 2d 688, 700 (N.D. Ill. 2004) (similarity in techniques, fundamental rules and certain functions in plaintiff and defendant's software resulted in substantial similarity of protected expression); *CMAX/Cleveland, Inc. v. UCR,*

---

[2] Except for stating the legal standard for joint authorship, Max's reliance upon *Erickson* is misplaced. In *Erickson*, the joint authorship issue came before the court on a motion for a preliminary injunction where plaintiff was required to show a likelihood of success on the merits. *See Erickson*, 13 F.3d at 1066. Moreover, the court had received testimony and evidence during an evidentiary hearing on the motion. *Id*. In the present case, at the pleading stage, no evidence has been received and the question is simply whether TEG has "plead[ed] facts sufficient to put [Max] on notice of the claims against [it]" which it has, and more. *R3 Composites Corp. v. G&S Sales Corp*., 960 F.3d 935, 942 (7th Cir. 2020).

5

*Inc.*, 804 F. Supp. 337, 354-56 (M.D. Ga. 1992) (sequence, structure, organization, file formats, screens, reports and transaction codes are protectable expression).

Independently copyrightable creative expression thus includes, for example, "the manner in which the program operates, controls and regulates the computer in receiving, assembling, calculating, retaining, correlating and producing useful information." *Whelan Assocs., Inc.*, 797 F.2d at 1239. Moreover, although mere "ideas, refinements, and suggestions" may not be independently copyrightable, an alleged co-author's contribution of "concrete expressions that were significant to the work's final product and commercial viability" may be considered independently copyrightable. *Janky*, 576 F.3d at 362-63.

The software at the center of this dispute was founded upon preexisting software that TEG had been independently supplying to the federal government for over a decade prior to meeting Max. (*See e.g.*, Dkt. 90 ¶¶ 11, 18-20, 25.) In fact, TEG alleges that Max approached TEG by suggesting that the parties "build and improve" upon TEG's existing software system. (*Id.* ¶ 27.) Throughout their partnership, TEG and Max worked together to create and develop the new software, (*id.* ¶¶ 26-29, 36, 68-71), and TEG helped improve and fix bugs in the software and its source code along the way. (*Id.* ¶¶ 38-43, 48, 50-52, 57-61.) The terms of the parties' JVA further evidences their collaborative efforts and contributions to the software, (Dkt. 90-1 at 2), as well as their co-ownership of the software and its source code. (Dkt. 90 ¶¶ 1, 34-35; Dkt. 90-1 at 3, 4.) All of these factual allegations, if proved, can and will constitute independently copyrightable contributions sufficient to support TEG's claim of joint authorship and co-ownership of the software at the heart of this matter.

Separately, and independently, as the Seventh Circuit explained in *Janky*, "concrete expressions" can be considered independently copyrightable if they are significant to the work's

6

"final product and commercial viability." *Janky*, 576 F.3d at 363. TEG alleges that it not only helped Max create and maintain the software, but it also provided the building blocks for the software in the form of C4MAP, its preexisting software. (*See, e.g.*, Dkt. 90 ¶¶ 11, 18-20, 23-29, 36, 38-43, 48, 50-52, 57-61, 68-71.) TEG's preexisting software, together with its ten-plus years of experience with the federal government that accompanied it, were concrete expressions necessary for the software's commercial viability in the government contracting space and went beyond mere ideas. *See Janky*, 576 F.3d at 363 (where singer's contributions to a song's lyrics were "important not only to the final sound, but also to [the] commercial viability" of the song, such contributions went beyond mere ideas and constituted "concrete expressions" passing the copyrightability test). Accordingly, and for this separate reason alone, TEG's contributions are sufficient to state a plausible claim that TEG contributed independently copyrightable material to the software.

  Even if Max's arguments—which TEG disputes—are ultimately credited by the Court and jury, TEG's claims to co-authorship and co-ownership rights in the software may still prevail. *See Gaiman v. McFarlane*, 360 F.3d 644, 659 (7th Cir. 2004) (dispensing with independently copyrightable requirement in instances where "[t]he finished project is copyrightable, yet . . . none of the separate contributions of the . . . collaborating artists would be"). In *Gaiman*, the Seventh Circuit gives an apt example of co-authorship even though one party does not contribute independently copyrightable contributions: Two professors collaborate on an academic article. One professor has brilliant ideas but cannot write; the other is an excellent writer with commonplace ideas. Even though one of the authors is merely contributing ideas to the article, their joint intent to collaborate on the article makes them such under 17 U.S.C. §201(a). *Gaiman*, 360 F.3d at 659.

7

Finally, Max's motion contests only the plausibility of TEG's claim to have contributed "independently copyrightable material" to the development of the software within the meaning of Seventh Circuit copyright law. Even if Max is correct (it is not), Max wholly fails to address TEG's additional factual allegations underlying Counts I and VI that are not grounded in copyright law alone. TEG has also alleged facts arising from the JVA that further support TEG's rights to be declared a co-owner of the software entitled to share one-half of the undivided interests with Max and one-half of all revenue received by Max from sales or licensing of the software. (*See e.g.*, Dkt. 90 ¶¶ 1, 31, 34-35, 75, 92, 94; Dkt. 90-1 at 2-4.)

Counts I and VI of the Amended Complaint plead sufficient facts to demonstrate TEG's right to a judicial declaration of its status as a joint author and co-owner of the software entitled to share in its undivided interests and revenues. Max's motion to dismiss should be denied.

**II.    TEG's Requested Relief is Proper and Max's Stated Refusal to Comply with a Court Order for that Relief Cannot Justify Dismissal of Count VI.**

For the reasons stated in Section I, TEG states a claim for declaratory relief under Count VI because TEG has alleged facts sufficient to support the conclusion that TEG is a co-author and co-owner of the software and, therefore, should be listed as such in any copyright registrations for the software. (Dkt. 90 ¶¶ 89-94.) Max's motion disputes neither the sufficiency of these factual allegations nor the Court's ability to issue a judicial declaration that "[a]ny copyright registrations obtained by Max for the software that do not include TEG as a co-author and co-claimant are [ ] inaccurate and incomplete." (*Id.* ¶¶ 93-94.) Rather, Max challenges only a portion of the relief sought by TEG under both Counts I and VI, namely, a Court Order ordering Max to cancel any and all copyright registrations in which it is listed as the sole author and/or claimant for the software pursuant to the procedure set forth in Section 1807.4(E) of the Copyright Office's

8

Compendium of U.S. Copyright Office Practices. (Dkt. 90 at 14 ¶ 4.) The relief requested by TEG is appropriate.

While courts have no authority to order the Copyright Office directly to cancel a copyright registration, the Copyright Office expressly recognizes the power of the courts to order a party to cancel a registration. In the Copyright Office's Compendium of U.S. Copyright Office Practices,[3] the Copyright Office states:

> Occasionally, the plaintiff(s) and/or defendant(s) in a copyright infringement lawsuit ask the court to issue an order directing a party to cancel his or her registration. When requesting this type of relief, litigants should ask the court to issue the order to the copyright claimant named in the certificate of registration or the claimant's duly authorized agent. In addition, **litigants should ask the court to direct that party to cancel the registration using the procedure described in Section 1807.4(E)** . . . .

U.S. Copyright Office, Compendium of U.S. Copyright Office Practices § 1807.4(F) "Court Ordered Cancellation" (3d ed. 2021) (emphasis added). This is the precise procedure requested in the Amended Complaint's Demand for Relief. (Dkt. 90 at 14 ¶ 4.) The Court plainly has the power to issue an order compelling Max to take this action. *See Trevari Media Ltd. Liab. Co. v. Cantu*, No. 6:23-cv-1879, 2024 U.S. Dist. LEXIS 127285, at **20-21 (D. Or. June 20, 2024) (denying motion to dismiss counterclaim for "copyright cancellation" because courts have the power to issue injunctive relief ordering a party to cancel its copyright registrations for failure to identify a joint author according to the Copyright Office procedures outlined in the Compendium). And of

---

[3] The Compendium of U.S. Copyright Office Practices, Third Edition (the "Compendium") is the administrative manual of the Register of Copyrights concerning Title 17 of the United States Code and Chapter 37 of the Code of Federal Regulations. It provides instruction to agency staff regarding their statutory duties and provides expert guidance to copyright applicants, practitioners, scholars, the courts, and members of the general public regarding institutional practices and related principles of law. *See* 37 C.F.R. § 201.2(b)(7).

course, more generally, district courts are authorized to compel a litigant to take action in compliance with a court order or mandatory injunction. *See*, *e.g.*, *United States v. Apex Oil Co., Inc.*, 579 F.3d 734 (7th Cir. 2009) (affirming district court's award, following a bench trial, of a mandatory injunction ordering the defendant to clean up environmental contamination).

Max's sole argument against Count VI is that Max will not comply with a Court order that it take an action under the Copyright Office's procedures. Max is free to invite contempt of Court at its own peril but Count VI is not limited to a request for an order to cancel the copyright registrations,[4] and the precise nature of the relief granted is within the sound discretion of the Court, not dictated by the Amended Complaint's Demand for Relief. In fact, the Court may alternatively issue an order compelling Max to file applications for supplementary registrations to correct and amplify the information in the existing copyright registrations by naming TEG as a co-author and co-claimant. *See* Compendium (Third) §§ 1802.5, 1802.6(D), 1802.6(F) (describing procedures for using supplementary registrations to correct errors or omissions involving the identity of a co-author or co-claimant of a work).

Max's assertion that it will refuse to comply if the Court orders Max to take action with respect to its copyright registrations does not and cannot constitute an appropriate ground for dismissal of the grounds (here, Count VI) supporting that specific requested relief. The only question before the Court is whether TEG has alleged facts sufficient to state a claim under Count VI and TEG has done so. The motion to dismiss Count VI should be denied.

---

[4] (*See* Dkt. 90 ¶¶ 91-94, and at 14, Demand for Relief, ¶¶ 1-3, 5-8.)

## **CONCLUSION**

For the foregoing reasons, TEG respectfully requests that the Court deny Max's motion to dismiss Counts I and VI of the Amended Complaint and award TEG any and all further relief the Court deems proper.

Dated: November 22, 2024                                 Respectfully submitted,


                                           *s/ Samuel J. Banks*_____
                                         Richard D. Kelley, *admitted pro hac vice*
                                         Raighne C. Delaney, *admitted pro hac vice*
                                         Stephen D. Caruso, *admitted pro hac vice*
                                         Samuel J. Banks, *admitted pro hac vice*
                                         Kandis M. Koustenis, *admitted pro hac vice*
                                         **BEAN KINNEY & KORMAN, PC**
                                         2311 Wilson Boulevard, Suite 500
                                         Arlington, VA 22201
                                         Tel: (703) 525-4000
                                         Fax: (703) 525-2207 (Fax)
                                         rkelley@beankinney.com
                                         rdelaney@beankinney.com
                                         scaruso@beankinney.com
                                         sbanks@beankinney.com
                                         kkoustenis@beankinney.com

                                         Alexander P. Orlowski, Atty. No. 30794-29
                                         Amanda Jane Gallagher, Atty. No. 32662-79
                                         **BARNES & THORNBURG LLP**
                                         11 South Meridian Street
                                         Indianapolis, IN 46204
                                         Tel: (317) 566-1110
                                         Fax: (317) 636-1507
                                         alexander.orlowski@btlaw.com
                                         amanda.gallagher@btlaw.com

                                         *Counsel for Triangle Experience Group, Inc.*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 22nd day of November, 2024, a true and correct copy of the foregoing was filed with the Court using the Court's CM/ECF System, which sent notice of this filing to all counsel of record. All parties may access this filing via the Court's CM/ECF System.

*s/ Samuel J. Banks*